**UNITED STATES of America,**

v.

**Martin James MONTI, Jr., also known as Martin Wiethaupt, Defendant.**

**Cr. No. 41929.**

United States District Court
E. D. New York.

Dec. 29, 1958.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. New York, by Victor C. Woerheide, Washington, D. C., and Marie McCann, Asst. U. S. Attys., Brooklyn, N. Y., for the United States.

Murray Gottesman, Brooklyn, N. Y., for defendant.

BYERS, Chief Judge.

This is a Title 28, Section 2255 motion by the defendant for an order vacating and setting aside his judgment of conviction of treason, on January 17, 1949.

A like motion was made and denied by Judge Inch, who was the trial judge before whom the defendant pleaded guilty in open court, and is the subject of his opinion reported in D.C., 100 F.Supp. 209.

The head note states at the outset, that the defendant James Monti is "also known as Martin Wiethaupt."

That decision was not appealed.

The present motion is more restricted in scope than the former, being confined to the single contention that the court which pronounced the sentence which the defendant is now serving, was without jurisdiction, i. e. personal jurisdiction over the defendant, since he was not "found" within this District within the requirements of 18 U.S.C. § 3238.

For convenience, that provision is quoted:

"§ 3238 *Offenses not committed in any district.*

"The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought."

The question of this court's jurisdiction over the subject-matter of the offense here involved, was inquired into and resolved in favor of the Government, in Ex parte Monti, D.C., 79 F.Supp. 651.

The correctness of that decision is not now brought into question. Perhaps it was involved by implication in the prior motion decided by Judge Inch.

To the same effect as to jurisdiction over the subject-matter, see Chandler v. United States, 1 Cir., 171 F.2d 921; certiorari denied 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081; Best v. United States, 1 Cir., 184 F.2d 131.

The point of the present attack which is not complicated by any assertions going to the merits of defendant's cause, is that he was taken into custody at Mitchel Field on January 26, 1948 by F. B. I. agents, immediately upon his receipt of a General Discharge under Honorable Conditions from the Army of the United States. The circumstances attending his presence at Mitchel Field will be stated presently, in the reverse order of their happening.

He was at once arraigned before a United States Commissioner, charged with treason, and remanded to the Federal House of Detention. The intermediate steps which culminated in his plea of guilty and sentence need not be recited.

The reason for his presence at Mitchel Field on the date of arrest is that he was then an enlisted man (Sergeant) in the Army of the United States (U. S. Air Force). This was because he enlisted in 1946 in order to comply with a Presidential order remitting the then unexecuted portion of a court martial sentence imposed on or about September 18, 1945. That order was to be "effective upon his (Monti's) enlistment in the Army of the United States."

The General Court Martial Order of the Headquarters, Mediterranean Theater of Operations, was the outcome of charges involving his unlawfully taking a United States Army airplane, and flying it into enemy territory, where he abandoned it. Thereafter, as was subsequently ascertained, he entered the service of Germany, and participated in radio broadcasts directed to American soldiers and others, in the effort to advance the German cause.

Seemingly in due course he was arrested by the United States authorities, and tried for theft of the air craft, and being AWOL; this was without knowledge by the Army authorities of his activities in what was then the military effort of the enemy. At the time the offense was committed, he was a Commissioned Officer in the U. S. Army.

While serving the court martial sentence, he was transported to this country by ship; that is, being an Army prisoner in custody, he was brought ashore from

the ship, in the Eastern District of New York. There is no contradiction of that fact.

Seemingly he continued thereafter to serve his Army sentence of fifteen years at Green Haven, New York. Then ensued the remission of the balance of his sentence above recited, and his enlistment apparently at Green Haven, New York, and his subsequent transfer to Eglin Field, Florida.

It is because he was subsequently ordered to report at Mitchel Field, obeyed that order, and was arrested as stated, that the present motion is made.

Some understanding of these antecedent facts is required in order that the reasons for the plea of guilty to the indictment to treason may be made clear. That plea is of great consequence in the decision of this motion.

The defendant's theory comes down to this: that his arrest should have been in Florida, and the subsequent trial on the treason charge should have been conducted in the U. S. District Court in that State. No argument is advanced that the same plea would not have been made in that court, or that a different outcome would have been likely.

The indictment in this court alleged— in addition to the facts constituting treason as averred—"the Eastern District of New York was the Federal Judicial District into which the defendant was first brought after the performance of the acts specified herein, and that the defendant was apprehended in the Eastern District of New York on the 26th day of January 1948."

The foregoing allege

(a) that the defendant was "found" in this District by stating that he was apprehended here. So much is stated in the United States v. Provoo, 2 Cir., 215 F.2d 531, upon which this defendant seems to rely,

(b) that he was first "brought" to the Eastern District.

■ Therefore the jurisdictional requirements having been set forth in the indictment, the plea of guilty was an admission of the truth of those allegations, which necessarily included the element of venue. The effect of the plea was to relieve the Government of proving that which in the absence of the plea, it would have been incumbent upon the prosecution to demonstrate.

■ That a plea of guilty admits all facts averred in the Government's pleading, has been decided in the following: Hood v. United States, 8 Cir., 152 F.2d 431.

The opinion states (at page 433):

" * * * On their plea of guilty there was, of course, no issue to submit to a jury. By such pleas they admitted the allegations of fact charged in the indictment, * * *." See also Lipscomb v. United States, 8 Cir., 226 F.2d 812, (certiorari denied 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843).

Among the allegations of fact admitted by this defendant's plea, are the bases of this court's jurisdiction, and the proper venue involved.

Inquiry into that subject has been foreclosed by the defendant, under circumstances described in detail in the said opinion of Judge Inch.

■ Probably the lapse of time, almost ten years, does not affect the legal issues, but it is a circumstance shown in the record under examination.

■ That venue, being a personal privilege, may be waived, has been decided in: Hagner v. United States, 60 App.D.C. 335, 54 F.2d 446; Mahaffey v. Hudspeth, 10 Cir., 128 F.2d 940; United States v. Gallagher, 3 Cir., 183 F.2d 342; Bickford v. Looney, 10 Cir., 219 F.2d 555.

Therefore the waiver of any question concerning venue, hereby attributed to this defendant's plea of guilty to the indictment, has a basis in decisions of other courts which have examined into the subject. That the waiver embraced jurisdiction over the defendant as to his person, see Pon v. United States, 1 Cir., 168 F.2d 373.

If this were not a sufficient reason to dispose of the motion, consideration

would be given to the procedure which the defendant challenges.

■ Since he was brought into this district under the circumstances recited, and since he was found here at his apprehension, it is not perceived that the Government is to be criticized for the procedure adopted, for the reason assigned by defendant's present counsel.

Stated shortly, it is that the defendant was transferred while in military service, i. e. an enlisted man (Sergeant in the Army of the United States) from Florida to Mitchel Field, at the instance of the Department of Justice, who made a request of the Army to that end, as a prerequisite to the arrest of the defendant within the jurisdiction of this court.

That such was indeed the fact was conceded at the hearing of this motion.

This court can find no reason to grant the motion because of that fact.

Just why one department of the Government should not cooperate with another, in connection with the enforcement of the law of the land, has not been made clear. It does not change the true aspect of the situation to say that the Army acted as the agent of the Department of Justice.

Both are agencies of the United States and are in duty bound to serve their common master.

There is no reason to suppose, from aught that appears in this record, that the Army officials had in mind any special reason to facilitate the Department of Justice, born of this defendant's earlier efforts to betray the military arm of the Government in the manner heretofore alluded to. If such an impulse were present, it would be understandable, without creating a technical defect in the legal process that has been followed.

A word should be said about the Provoo case, supra, upon which the defendant relies. There was present in that case, no waiver of the venue question, based upon a plea of guilty.

That defendant pleaded not guilty, and went to trial, with ultimate results that are not important on this motion. Therefore the issue of venue was necessarily present in the case, as it came before the reviewing court.

It has been the effort to show in this case that the question of venue is not now open.

There is a resemblance to Provoo in that this defendant had been returned to Eglin Field in Florida after his discharge had been recommended but before it could be completed. The Department of Justice did indeed request that interruption in the discharge process, which means that the request could have been denied. However, the defendant was yet in the military service, and hence could be lawfully recalled to Eglin Field. This was done in May of 1947, and the transfer to Mitchel Field took place in the following January.

A point of departure from the Provoo case is found in the reason stated in so much of that record as is submitted on this motion. Provoo had not been "first brought" into the Southern District of New York. This defendant had been, on his return from overseas as an Army prisoner.

While he could have been "first brought" i. e. apprehended, in Florida, would seem that literal compliance with for the purpose of the treason charge, it Title 18 U.S.C. § 3238 could have been reasonably thought to point to the Eastern District of New York as the proper place for him to be "found." At least there is plausibility in that reasoning, as contrasted with that which appears in the Provoo record, as herein referred to.

In other words, I do not think that it has been demonstrated that this court was a hand-picked forum in which the defendant was brought to trial.

The cases cited in defendant's reply affidavit on the subject of "found" and "first brought" are quite foreign factually, to the circumstances here involved.

■ As an added matter, subordinate to the principal motion, the defendant seeks a subpoena duces tecum for all Army records touching the matters

stated to have indicated a disposition to cooperate with the Department of Justice on the part of military authorities.

In view of the concessions made at the hearing, and referred to in this opinion so far as material, the application for a subpoena, etc., is denied.

The motion under Title 28, Section 2255, is denied.

Settle order.